In the Matter of the Estate of CHARLES A. BIRD, Deceased.

Surrogate's Court, Steuben County, February 19, 1938.

*Shults & Shults* [*Clyde E. Shults* of counsel], for Clyde E. Shults, as executor, etc.

*Annabel & Wightman* [*F. W. Annabel* of counsel], for Florence Sullivan.

*George L. Grobe, United States Attorney* [*R. Norman Kirchgraber, Assistant United States Attorney*, of counsel], for the United States.

PRATT, S. Charles A. Bird died a resident of the city of Hornell, Steuben county, N. Y., on November 11, 1925. Prior to that time he had at one time been a resident of Los Angeles, Cal. Before March 15, 1923, decedent filed Federal income tax return for the year 1922 with the collector of internal revenue for the sixth district of California and paid a tax for that year of ninety-five dollars. In the return submitted he claimed a loss on real estate sold of $6,850. Following decedent's death, his last will and testament

was promptly probated, and Clyde E. Shults, an attorney of Hornell, was appointed executor of the will. Under date of January 26, 1926, J. A. Hamilton, deputy collector in charge of Internal Revenue Department, Buffalo, N. Y., in behalf of the United States government, wrote the executor and inclosed proof of claim against the estate for income tax deficiency in the amount of $527.50 for the said year 1922. Under date of January 29, 1926, the executor notified the said J. A. Hamilton, at Buffalo, N. Y., that the claim was rejected.

The executor had acted for decedent during his lifetime upon many legal and business matters, and the decedent, after the filing thereof, had consulted him with regard to this 1922 income tax return. Decedent had been engaged in litigation with his former wife for a number of years, and, because of the provision of a divorce decree, decedent had conducted most of his major business transactions in the name of one William G. Masterman. At the time that Masterman died there was a large sum of Liberty bonds in Masterman's safe deposit box which Masterman's executrix subsequently restored to the decedent herein, the executor being present and knowing about this transaction. The executor had handled some real estate transactions for said Masterman and the decedent, such real estate being located at Hastings-on-Hudson, Westchester county, N. Y. After various maneuvers with respect to this real estate, Masterman finally sold it, and the proceeds from the sales were remitted to the decedent herein. One William E. Burdakin, a real estate broker at Hastings-on-Hudson, handled the real estate transactions. The executor, through his employment by decedent and his contacts with Masterman and Burdakin, learned that this real estate was purchased for $12,000 and that the decedent made a mistake in listing the cost of the real estate at $14,350 in Schedule C of his 1922 Federal income tax return. The executor from these sources also believed that this real estate was sold for $7,300, less $600, which was never paid to the decedent by the broker, the executor having in his possession protested check from Burdakin for $612.92. The executor also is possessed of a letter from Burdakin to decedent, dated November 22, 1922, informing decedent that the last parcel of this real estate had been sold for $1,500 and that a check for $900 was inclosed and the remaining $600 would be collected and remitted to decedent at an early date.

From executor's personal knowledge as attorney for decedent and from the papers and records, letters, check which he has obtained from decedent's papers, the executor claims the net loss which decedent should have reported in his 1922 Federal income

tax return under Schedule C on the real estate transaction should have been $5,065 instead of the $6,850 actual claim, and that a proper computation of the decedent's tax would, therefore, show an additional tax of $77.80 due the government on this tax return, and not $527.50, the amount claimed by the government.

After decedent's death extensive litigation, in which the estate was involved, prevented the earlier settlement of this estate.

After many delays and adjournments, the United States government finally appeared in this court, and this claim was tried out on the final account, and the attorneys stipulated most of the facts and exhibits, which were in the forms of proof of claim, letters, duplicate original rejection of claim, assessment certificate, and an affidavit by Clyde E. Shults, the executor, the first three pages of which were stipulated and received and the balance offered by Shults and objected to by the government. Under the stipulation the court has sustained the objection to the first four paragraphs on page 4 of said affidavit, with exception to the executor's attorneys. On the balance of the affidavit the court has overruled the objection of the government with exception to the government's attorneys.

Exhibit F, produced by the government, is a letter of Clyde E. Shults, the executor herein, to George W. Eberez, head of Division Internal Revenue Service, Buffalo, N. Y., attached to which is a copy of the 1922 income tax return of C. A. Bird, attached to which is a copy of a letter addressed to C. A. Bird, at 1230 June street, Los Angeles, Cal., that being the street address given by decedent on his income tax return. This letter is undated. It says, " loss of $6850 deducted as loss on sale of real estate disallowed as you have failed to call and explain this loss, although requested to do so." Following that is a *resume* of the tax return which the government claims should have been filed by the decedent showing $527.50 additional tax due and interest of $26.38, total $553.88.

It does not appear specifically that the government ever sent this letter, although that might be a probable assumption from the facts of the case. It also does not appear that the decedent ever received this letter, and under no circumstances could that be an assumption or probability under the facts as presented. The government does not at any time claim that the loss was not a proper one. The government merely claims the additional tax because the decedent failed to call at their office and explain it pursuant to this letter. On this basis, and this basis alone, assessment certificate was made by the government assessing the additional tax of $527.50 and interest.

It appears from the proof presented that shortly after filing his 1922 income tax return in Los Angeles the decedent moved back

east to Hornell, N. Y., and there he was taken sick and died before this matter was adjusted.

The government presented its proof of the claim in this court on the final judicial settlement of the executor, at which time it urges that the claim should be allowed, not because the tax was actually due, but because the decedent did not appear to explain a deduction and that the tax was, therefore, duly assessed against the decedent and a *prima facie* case made out against the estate, and that the Board of Tax Appeals of the United States government in certain cases can refute the determination of the Commissioner of Internal Revenue and redetermine whether or not this tax is correct *de novo*. The government claims that if a petition is not filed with the Board of Tax Appeals to make such determination that the decision of the collector or Commissioner of Internal Revenue is final. It is conceded no such petition was filed.

The government further claims that the matters on pages 4, 5, 6 and 7 of Exhibit J, the executor's affidavit, are hearsay and inadmissible as against the government, and that, inasmuch as the executor, Shults, did not make out the original 1922 return of decedent, Shults is, therefore, incompetent to act as a witness as to the matters stated in the return, and that his transactions regarding the real estate and other matters set forth in the affidavit are inadmissible on the ground that proper foundation has not been laid for the admission of the evidence, and that Shults is not a competent person to testify as to the same, having had no knowledge of the make up of the return of said decedent.

It is to be noted that, where the decedent dies during any year where income tax may be payable, the government requires the personal representative of the estate to prepare, verify and file an income tax return. I believe that the information procured by the executor as attorney for the decedent prior to his death and as his executor after his death and from the papers and records of the decedent is the same information which the executor would have had to use, for instance, in preparing a return for the decedent for 1925, the year of his death, had the decedent's income for such year made such a return necessary.

Section 272 of title 26 of the United States Code, so far as applicable, states in part: " (a) Petition to Board of Tax Appeals. If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 90 days after such notice is mailed (not counting Sunday or a legal holiday in the District of Columbia as the ninetieth day), the taxpayer may file a petition

with the Board of Tax Appeals for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer."

It does not appear here that any notice by registered mail was sent the decedent by the government. In the absence of such proof, therefore, the court can find that the government had no right to make the assessment for deficiency which it made and such assessment was arbitrary, unauthorized and illegal. I cannot accept the view that, just because the government did it, a *prima facie* case is made out. In view of the arbitrary, unjust and manifestly incorrect assessment which the government made and the submission by the government to the jurisdiction of this court, surely the surrogate should invoke the equity powers given him by the Surrogate's Court Act.

By way of comparison, executor's attorneys argue that section 274 of title 26 of the United States Code gives jurisdiction to bankruptcy courts to inquire into and determine the facts regarding income taxes, so that the other provisions of the United States Code which provide for appeal to the Board of Tax Appeals are, therefore, not exclusive; that under section 40 of the Surrogate's Court Act, where recourse is had by the government to the Surrogate's Court, as in this instance, the government thereby waives the Board of Tax Appeals remedy and confers jurisdiction upon and accepts it in the Surrogate's Court. This comparison has much merit.

I hold that the government, having submitted its case for determination to the Surrogate's Court of this county, this c aim is to be considered and treated as any other claim presented in this court, and the claim of the government for additional tax of $527.50, plus interest, should be disallowed.

From the facts presented, the evidence of the executor with regard to the real estate transaction showing a net loss of $5,065 on such transaction and a calculation of additional tax as $77.80, together with the interest from March 15, 1923, is accepted as the proper amount of the government's claim against this decedent's estate.

Prepare decree accordingly.